06-0360-ag
Barco-Sandoval v. Gonzales

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2006

(Submitted: May 23, 2007                    Decided: August 1, 2007)
                                            (Amended: January 25, 2008)

Docket No. 06-0360-ag

BYRON BARCO-SANDOVAL,

                    *Petitioner*,

        v.

ALBERTO GONZALES, Attorney General
of the United States,

                    *Respondent.*

Before: WALKER and CABRANES, *Circuit Judges*, and GOLDBERG,[*] *Judge*.

Petitioner seeks review of an order of the Board of Immigration Appeals, adopting and

affirming a decision of an Immigration Judge, denying his application for cancellation of removal

under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1).  The

agency determined that petitioner should not be entitled to cancellation of removal as a matter of

discretion, and that petitioner had failed to demonstrate the exceptional and extremely unusual

hardship necessary to obtain cancellation of removal under the statute.  On appeal, petitioner

contends that the agency used the incorrect standard to determine whether he had demonstrated

extreme and unusual hardship, and that he was entitled to relief under both the correct standard and

_____

[*] The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

1

the allegedly incorrect standard actually used by the agency. The Government seeks dismissal of the petition, asserting that this Court lacks jurisdiction to review the agency's discretionary and factual determinations leading to the denial of petitioner's application for cancellation of removal.

We dismiss the petition, concluding that we lack jurisdiction to review the agency's discretionary and factual determinations underlying the denial of petitioner's application for cancellation of removal, and that petitioner fails to raise any colorable constitutional claims or questions of law.

Byron Barco-Sandoval, Bridgeport, CT, *pro se*.

Richard M. Molot, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney, Sandra Glover, Assistant United States Attorney, *on the brief*), United States Attorney's Office for the District of Connecticut, New Haven, CT, *for Respondent*.

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioner Byron Barco-Sandoval, a native and citizen of Guatemala, seeks review of a decision by the Board of Immigration Appeals ("BIA"), adopting and affirming a decision by Immigration Judge ("IJ") Michael W. Straus, denying his application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b)(1).[1]

---

[1] 8 U.S.C. § 1229b(b)(1) provides as follows:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien–
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of an offense under [other sections of the INA]; and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

*See In re Barco-Sandoval*, No. A 71 500 354 (B.I.A. Jan. 4, 2006) ("BIA Dec."), *aff'g In re Barco-Sandoval*, No. A 71 500 354 (Immig. Ct. Hartford Oct. 1, 2004) ("IJ Dec."). The IJ denied Barco-Sandoval's application for two reasons. First, the IJ stated that Barco-Sandoval did not deserve a favorable exercise of discretion because he had been arrested twice for driving while intoxicated ("DWI"). Second, the IJ found that Barco-Sandoval had failed to demonstrate that his removal would "result in exceptional and extremely unusual hardship" to his family, 8 U.S.C. § 1229b(b)(1)(D). The BIA agreed with the IJ's reasoning and affirmed his decision.

On appeal, Barco-Sandoval contends that the IJ's decision, and the BIA's decision adopting it, used the incorrect standard to determine whether he had demonstrated extreme and unusual hardship, and that he was entitled to relief under both the correct standard and the allegedly incorrect standard actually used by the agency. The Government seeks dismissal of the petition, asserting that this Court lacks jurisdiction to review the agency's discretionary and factual determinations leading to the denial of Barco-Sandoval's application for cancellation of removal.

We dismiss the petition, concluding (1) that we lack jurisdiction to review the agency's discretionary and factual determinations underlying the denial of Barco-Sandoval's application for cancellation of removal, and (2) that Barco-Sandoval fails to raise any colorable constitutional claims or questions of law. In reaching this conclusion, we reaffirm our holding in *De La Vega v. Gonzales*, 436 F.3d 141 (2d Cir. 2006), that we lack jurisdiction to review "discretionary determinations concerning whether to grant cancellation of removal," *id.* at 144, and we settle the question of whether *De La Vega* remains good law in light of our revised opinion in *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir. 2006) ("*Xiao Ji Chen I*"), *on reh'g*, 471 F.3d 315 (2d Cir. 2006) ("*Xiao Ji Chen II*"). *Cf. Barnaby-King v. DHS*, 485 F.3d 684, 686 (2d Cir. 2007) (raising question in dicta of whether cases relying on *Xiao Ji Chen I*'s interpretation of "constitutional claims and questions of law," 8 U.S.C. § 1252(a)(2)(D), remain controlling).

## BACKGROUND

Barco-Sandoval entered the United States illegally in March 1992. In May 2003, he was issued a Notice to Appear in removal proceedings. He subsequently admitted the factual allegations contained in the Notice to Appear and conceded that he was removable. In July 2004, Barco-Sandoval applied for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), which authorizes the Attorney General, in his discretion, to cancel the removal of an alien who meets certain statutory requirements. *See ante* note 1 (reproducing 8 U.S.C. § 1229b(b)(1)).

At his October 2004 hearing on the application for cancellation of removal, Barco-Sandoval, represented by counsel, testified that he had been employed with the same company for the past eleven years, and that he made $17.50 an hour working for the company. Barco-Sandoval stated that he had lived with the same woman, Amrailas Bonilla—also an undocumented alien—for the past eleven years, and had fathered three U.S.-citizen children with her. Barco-Sandoval testified that his children were doing well in school, with the exception of his youngest, Katherine, who "has a problem with speech." He stated that Katherine's teacher and doctor had suggested that Barco-Sandoval and Bonilla take her to a therapist, but they had not yet done so.

When asked about the consequences of his removal, Barco-Sandoval stated that if he were forced to return to Guatemala, he would have no family members there, other than his grandparents, whom he helps to support. He also testified that if he were returned to Guatemala his children would suffer, because of the bond he has with them and also because of the financial support he provides.

Barco-Sandoval admitted that he had been arrested twice for DWI. He asserted that after his first arrest, in 1995, he took ten alcohol education classes and the charges were dismissed. He was arrested again for DWI in 2002. As a result of this arrest, Barco-Sandoval was put on

4

probation, his license was suspended for a year, and he was required to take six months of alcohol education classes. He asserted that he had completed all of the required classes, but told the IJ that he had left at home proof of his successful completion of these requirements.

Following the hearing, the IJ rendered an oral decision denying Barco-Sandoval's application for cancellation of removal. The IJ determined that Barco-Sandoval should be denied relief "in the exercise of discretion" based on "the dangerousness of driving under the influence, and the potential harm to the public" he posed. IJ Dec. 6, Joint Appendix ("J.A.") 36. The IJ then relied on *In re Monreal-Aguinaga,* 23 I. & N. Dec. 56 (BIA 2001), in determining that Barco-Sandoval had not established that his three U.S.-citizen children would suffer "exceptional and extremely unusual hardship" if he were removed to Guatemala.[2] The IJ noted that under *Monreal-Aguinaga*, cancellation of removal relief "should be available to individuals only in compelling cases." *Id.* (citing *Monreal-Aguinaga*, 23 I. & N. Dec. at 59). The IJ found that, even though Barco-Sandoval's children would lose the financial support and companionship that he provided were he to be removed, these factors were not, by themselves, sufficient to establish his right to relief because "[t]hese are hardship factors that can typically occur when a close family member must depart the United States." *Id.* at 8, J.A. 38. The IJ also found that Barco-Sandoval's failure to address his daughter Katherine's "serious speech issue" was an adverse factor weighing against a finding that his children would suffer exceptional hardship were he to be removed. *Id.* at 7, J.A. 37. The IJ did, however, grant Barco-Sandoval voluntary departure.

On January 4, 2006, the BIA adopted and affirmed the IJ's decision. The BIA agreed that Barco-Sandoval had failed to establish that his three U.S. citizen children would face exceptional and

---

[2] The IJ considered the asserted hardship to Barco-Sandoval's U.S.-citizen children, but did not consider whether Barco-Sandoval's removal would cause hardship to Bonilla, because the statute only permits consideration of "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence," 8 U.S.C. § 1229b(b)(1)(D), and Bonilla is neither Barco-Sandoval's spouse nor a U.S. citizen or lawful permanent resident.

extremely unusual hardship upon his removal, and that his "recidivist misconduct for driving under the influence" supported the denial of his application in the exercise of discretion. BIA Dec. 1, J.A. 2.

On January 26, 2006, Barco-Sandoval, appearing in this Court *pro se*, timely filed a motion for a stay of removal and a petition for review of the BIA's January 2006 order. In his brief in support of the petition, Barco-Sandoval argues that the IJ's reliance on *Monreal-Aguinaga* was "misplaced," Pet'r Br. 4, because that decision allegedly was "superseded" by the BIA's subsequent decision in *In re Recinas*, 23 I. & N. Dec. 467 (BIA 2002). Barco-Sandoval asserts that *Recinas* established a less stringent standard than *Monreal-Aguinaga* for satisfying the "exceptional and extremely unusual hardship" requirement of the cancellation of removal statute. Barco-Sandoval's brief also contends that, under either the *Recinas* standard or the *Monreal-Aguinaga* standard, he should be entitled to cancellation of removal because of the severe economic hardship that his U.S. citizen children—particularly his speech-impaired daughter—would suffer were he forced to return to Guatemala.[3]

In March 2007, the Government filed a motion to dismiss the petition for lack of jurisdiction. In its motion, the Government argues that this Court lacks jurisdiction to review the January 2006 BIA ruling because it reflects a discretionary decision that is unreviewable under INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), which provides that "[n]otwithstanding any other provisions of law . . ., no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under [8 U.S.C.] section . . . 1229b," the cancellation of removal statute. The Government acknowledges that under Section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub.

---

[3] Barco-Sandoval asserts that he is not attacking "the discretionary decision of the IJ or the BIA, but rather the way in which that decision was reached," Pet'r Br. 6, but it is clear from Barco-Sandoval's remaining arguments that he *does* take issue with the "discretionary decision of the IJ [and] the BIA"; his assertion that he had adequately demonstrated "exceptional and extremely unusual hardship" under any standard can only be read as a challenge to the result reached by the agency.

6

L. No. 109-13, Div. B, 119 Stat. 231, 310-11 (codified at 8 U.S.C. § 1252(a)(2)(D)), the limitations on judicial review set forth in 8 U.S.C. § 1252(a)(2)(B)(i) are not to be "construed as precluding review of constitutional claims or questions of law raised upon a petition for review."  8 U.S.C. § 1252(a)(2)(D).  Relying on *De La Vega* and *Xiao Ji Chen II*, the Government contends that Barco-Sandoval raises no non-frivolous constitutional claims or questions of law in his petition, and therefore we are required to dismiss the petition for want of jurisdiction.

## DISCUSSION

**A.**      *De La Vega* **Remains Binding Law of the Circuit**

If *De La Vega* remains binding, we lack jurisdiction to review Barco-Sandoval's challenge to the BIA's decision denying him the discretionary relief of cancellation of removal.  We concluded in *De La Vega* that "the BIA's discretionary determinations concerning whether to grant cancellation of removal constitute 'judgment[s] regarding the granting of relief under . . . section 1229b' within the meaning of 8 U.S.C. § 1252(a)(2)(B)(i) and therefore the review of such determinations falls outside our jurisdiction."  436 F.3d at 144 (alteration and omission in original).  We held further that "(1) 'exceptional and extremely unusual hardship' determinations by the BIA are discretionary judgments and (2) we therefore lack jurisdiction to review such judgments."  *Id.* at 145-46.

We must re-examine *De La Vega*, however, because in concluding that we lack jurisdiction to review the agency's discretionary denial of cancellation of removal, we "relied partly on reasoning in [*Xiao Ji Chen I*]," which was "significantly revised" after *De La Vega* was decided.  *Barnaby-King*, 485 F.3d at 686.  *Xiao Ji Chen I* held that "challenges to the exercise of routine discretion by the Attorney General (or the BIA as his designee) do not raise 'constitutional claims or questions of law,' and may not therefore be reviewed by this Court, notwithstanding Section 106 of the REAL ID Act."  *De La*

7

*Vega*, 436 F.3d at 146 (citing *Xiao Ji Chen I*, 434 F.3d at 154, 2006 U.S. App. LEXIS 261 at \*19-\*20).[4]

Applying this principle, we concluded in *De La Vega* that "Section 106 of the REAL ID Act does not override statutory provisions denying the courts jurisdiction to review discretionary decisions of the Attorney General," including the "BIA's discretionary judgment that [a] petitioner failed to show 'exceptional or extremely unusual hardship' justifying cancellation of removal." 436 F.3d at 146.

In *Xiao Ji Chen II*, we "revise[d] substantially our analysis in Part I of [*Xiao Ji Chen I*] as to what constitutes 'questions of law' under section 106(a)(1)(A)(iii) of the REAL ID Act." 471 F.3d at 319. Instead of interpreting "questions of law" to mean only "matters of statutory construction," *Xiao Ji Chen I*, 434 F.3d at 154, on rehearing we interpreted "questions of law" more broadly to "encompass the same types of issues that courts traditionally [reviewed] in habeas review over Executive detentions," *Xiao Ji Chen II*, 471 F.3d at 326-27. Moreover, in a footnote *Xiao Ji Chen II* cast doubt on some decisions that relied on *Xiao Ji Chen I*, stating that "[d]ecisions of our Court that have relied on the authority of Part I of [*Xiao Ji Chen I*] should not be considered controlling *to the extent that they interpreted the phrase 'questions of law' more narrowly than does this revised opinion.*" *Id.* at 319 n.\*\* (emphasis added). *Barnaby-King* stated in dicta that, in view of *Xiao Ji Chen II*'s expanded interpretation of "questions of law" and this footnote, it remains an "open question" whether cases relying, in some part, on the "questions of law" interpretation set forth in *Xiao Ji Chen I*—including *De La Vega*—remain binding. *See Barnaby-King*, 485 F.3d at 686-87.

We now answer the question raised by our rehearing of *Xiao Ji Chen I* and conclude that the holding of *De La Vega* was not affected by our revised decision in *Xiao Ji Chen II*. In *Xiao Ji Chen II*, we reaffirmed that "although the REAL ID Act restores our jurisdiction to review 'constitutional

---

[4] We provide a LEXIS citation here because *Xiao Ji Chen I* had not been published in a federal reporter when *De La Vega* was decided. The portion of *Xiao Ji Chen I* cited by *De La Vega* stated, *inter alia*, that "[b]ecause the REAL ID Act only provides us with jurisdiction to review constitutional claims or matters of statutory construction, we remain deprived of jurisdiction to review discretionary and factual determinations." *Xiao Ji Chen I*, 434 F.3d at 154.

claims or questions of law,' 8 U.S.C. § 1252(a)(2)(D), we remain deprived of jurisdiction to review decisions under the INA when the petition for review essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion and raises neither a constitutional claim nor a question of law." 471 F.3d at 329. Even though a "constitutional claim" or "question of law" may "arise for example in fact-finding which is flawed by an error of law" or "where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard," *id.*, a petitioner cannot "us[e] the rhetoric of a 'constitutional claim' or 'question of law' to disguise what is essentially a quarrel about fact-finding or the exercise of discretion," *id.* at 330. Because *De La Vega*'s holding was based on the conclusion that "'exceptional and extremely unusual hardship' determinations by the BIA are discretionary judgments," 436 F.3d at 145, and because *Xiao Ji Chen II* reaffirmed that we lack jurisdiction to review "a quarrel about . . . the exercise of discretion," 471 F.3d at 330, we decide that *De La Vega* continues to bind us.[5]

**B. There are No Colorable "Questions of Law" to Review**

As indicated above, Barco-Sandoval's brief asserts that the IJ and BIA used the incorrect legal standard—one articulated in the BIA's opinion in *Monreal-Aguinaga* rather than in its opinion in *Recinas*—to determine whether he was entitled to cancellation of removal, but that under either standard he should have obtained relief.

While the argument that a discretionary decision was "based on a legally erroneous standard" raises a "question of law," *Khan v. Gonzales*, 495 F.3d 31, 35 (2d Cir. 2007), we lack jurisdiction to review any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-

---

[5] While *De La Vega* involved a BIA decision reversing an IJ's finding of "exceptional and extremely unusual hardship," it did not concern itself with our jurisdiction under these circumstances in light of the fact that the parties had not argued this point. For a treatment of the jurisdictional significance of such BIA reversals, see *Noble v. Keisler*, 505 F.3d 73, 77-78 (2d Cir. 2007).

question jurisdiction, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006). Because Barco-Sandoval's claim falls into this category, we lack jurisdiction to review it.

In *Monreal-Aguinaga*, decided in 2001, the BIA set forth a list of factors relevant to its determination of whether an applicant for cancellation of removal had demonstrated "exceptional and extremely unusual hardship," *see* 23 I. & N. Dec. at 63-64, and applied those factors to deny cancellation of removal to the applicant in that case, *see id.* at 64-65. In *Recinas*, decided the next year, the BIA granted an application for cancellation of removal after determining that the applicant's unique circumstances placed her within "the outer limit of the narrow spectrum of cases in which the exceptional and extremely unusual hardship standard will be met." 23 I. & N. Dec. at 470. While Barco-Sandoval argues that *Recinas* set forth a new legal standard applicable to cancellation of removal, *Recinas* explicitly states that its analysis relies on the standards set forth in *Monreal-Aguinaga* and a subsequent case, *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002):

> While any hardship case ultimately succeeds or fails on its own merits and on the particular facts presented, *Matter of Andazola* and *Matter of Monreal* are the starting points for any analysis of exceptional and extremely unusual hardship. Cancellation of removal cases coming before the Immigration Judges and the Board must therefore be examined under the standards set forth in those cases.

*Recinas*, 23 I. & N. Dec. at 469; *see also id.* at 472-73 ("We emphasize . . . that this decision cannot be read in isolation from *Monreal-Aguinaga* and *Andazola*. Those cases remain our seminal interpretations of the meaning of 'exceptional and extremely unusual hardship' . . . ."). *Recinas* is so obviously an application of *Monreal-Aguinaga*, leaving the latter's standard intact, that Barco-Sandoval's argument that the agency incorrectly relied on *Monreal-Aguinaga* rather than *Recinas* in denying his application for cancellation of removal does not even reach the level of being colorable. Accordingly, there is no colorable "question of law" that we have jurisdiction to review. *See Avendano-Espejo v. Dep't of Homeland Sec.*, 448 F.3d 503, 505 (2d Cir. 2006) (dismissing a petition because the petitioner "failed to raise any *colorable* 'constitutional claims or questions of law'

10

sufficient to invoke our jurisdiction under the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D)" (emphasis added)); *cf. Saloum v. U.S. Citizenship & Immigration Servs.*, 437 F.3d 238, 243 (2d Cir. 2006) ("Although we certainly retain jurisdiction to review due process challenges under the 'constitutional claims' language of the REAL ID Act, a petitioner must allege at least a colorable constitutional violation." (internal quotation marks omitted)).[6]

---

[6] In *Khan v. Gonzales*, __ F.3d __, 2007 WL 2127712 (2d Cir. July 26, 2007), we reaffirmed that we have jurisdiction to review claims that "the agency applied an erroneous legal standard in making a discretionary determination." *Id.* at *3. We read this, in conjunction with our earlier decisions in *Xiao Ji Chen*, *Avendano-Espejo*, and *Saloum*—as we must—to reaffirm the uncontroversial proposition that we have jurisdiction to determine our own jurisdiction over a petition for review. *See Kuhali v. Reno,* 266 F.3d 93, 100 (2d Cir. 2001) (noting "the inherent jurisdiction of Article III federal courts to determine their jurisdiction"). Pursuant to this authority, we must determine whether a petitioner's arguments raise any colorable (*i.e.*, non-frivolous) constitutional claims or questions of law. If an asserted constitutional claim or question of law is colorable, we have jurisdiction to review it, whether or not it is ultimately found to be meritorious. If an argument is frivolous, however, then regardless of the nomenclature or verbal formula used (*i.e.*, its rhetoric), we lack jurisdiction to review it. *See Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244 n.10 (2006) ("A claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)); *cf. Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (holding that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact"); *Hidalgo-Disla v. INS*, 52 F.3d 444, 447 (2d Cir. 1995) (dismissing petition for review as frivolous after "conclud[ing] that, although [petitioner's] challenge justifies detailed evaluation, it nevertheless cannot be argued in good faith on the merits").

Our approach to adjudicating frivolous constitutional or legal claims is consistent with that of other Circuits that have considered the matter. *See, e.g., Pan v. Gonzales*, 489 F.3d 80, 84 (1st Cir. 2007) ("To trigger our jurisdiction [over a petition for review under the REAL ID Act], the putative constitutional or legal challenge must be more than a disguised challenge to factual findings. The underlying constitutional or legal question must be colorable; that is, the argument advanced must, at the very least, have some potential validity."); *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007) ("Petitioners alleging 'constitutional claims' under § 1252(a)(2)(D) must, as a threshold, state a colorable violation of the United States Constitution."); *Falek v. Gonzales*, 475 F.3d 285, 289 n.2 (5th Cir. 2007) ("[Petitioner] frames his 'legal' argument, that the BIA did not follow its own precedent, to cloak a request for review of the BIA's discretionary decision, which is not a question of law." (internal quotation marks omitted)); *Mouawad v. Gonzales*, 485 F.3d 405, 411 (8th Cir. 2007) (dismissing petition for review because petitioner "does not raise any colorable constitutional challenges or questions of law as to the IJ's determinations"); *Vargas-Hernandez v. Gonzales*, __ F.3d __, No. 04-73343, 2007 WL 2215796 at *1 (9th Cir. Aug. 3, 2007) ("We have jurisdiction over petitions for review that raise colorable constitutional claims or questions of law."); *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) ("While we 'retain jurisdiction to review due process challenges under the constitutional claims language of the REAL ID Act, a petitioner must allege at least a colorable constitutional violation.'" (quoting *Saloum v. U.S. Citizenship & Immig. Servs.*, 437 F.3d 238, 243 (2d Cir. 2006))); *id.* at 1284 n.2 ("For a constitutional claim to be colorable, the alleged violation need not be substantial, but the claim must have some possible validity." (internal quotation marks omitted)); *see also Ablahad v. Gonzales*, No. 05-4457, 2007 WL 2128182, *4 (6th Cir. 2007) (unpublished summary order) (dismissing challenge to denial of asylum application because "petitioner does not raise colorable constitutional or legal challenges to the denial of his asylum application" on the basis of its lack of timeliness); *Cervantes de Hernandez v. Chertoff*, 215 Fed. App'x 509, 513 (7th Cir. 2007) (unpublished summary order) (dismissing petitioner's challenge to denial of her request for adjustment of status on grounds that it "does not present a colorable due process claim"); *Kechkar v. Gonzales*, Nos. 06-9583, 06-9595, 2007 WL 1991162, *3 (10th Cir. 2007) (unpublished summary order) (dismissing challenge to denial of voluntary departure where the "alien does not present a colorable constitutional claim capable of avoiding the jurisdictional bar"); *cf. Califano v. Sanders*, 430 U.S. 99, 109 (1977) (holding that a statute will not be interpreted to limit federal courts' jurisdiction over "adjudication of *colorable* constitutional claims . . . unless Congress' intent to do so is manifested by clear and convincing evidence" (emphasis added) (internal quotation marks omitted); *Harris v. U.S. R.R. Retirement Bd.*, 198 F.3d 139, 142-43 (4th Cir. 1999) (holding that "there is an exception to the bar to judicial review [established by statute

11

We also lack jurisdiction to review Barco-Sandoval's argument that he should have received cancellation of removal even under the *Monreal-Aguinaga* standard. Barco-Sandoval asserts that he "met his burden of proof" on the issue of whether he had demonstrated exceptional and extremely unusual hardship, Pet'r Br. 4, and that "[b]y failing to specify why [he] had failed in that burden, or why the case was different than the BIA's holding in *Recinas*, the IJ violated due process requirements set by this Court," *id.* In assessing whether we have jurisdiction to review this argument, we must "determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices, in which case [we] would lack jurisdiction." *Xiao Ji Chen II*, 471 F.3d at 329. We conclude that, despite the nomenclature used by Barco-Sandoval, his assertion that he should have obtained cancellation of removal under the applicable legal standard constitutes a "mere[ ] quarrel[ ] over the correctness of the factual findings or justification for the discretionary choices" made by the agency, a quarrel that we lack jurisdiction to review. We hold that Barco-Sandoval's "resort to the terms conventionally used in describing constitutional claims and questions of law," *id.* at 331—here, his allegation that the IJ's decision violated "due process requirements"—does not "overcome Congress's decision to deny jurisdiction over claims which in reality consist of nothing more than quarrels over the correctness of fact-finding and of discretionary decisions," *id.*

## CONCLUSION

For the reasons stated above, Barco-Sandoval's petition is dismissed.

---

over petitions for review of agency decisions] that applies when the refusal to reopen is challenged by colorable constitutional claims"). We have found no case in which a Court of Appeals exercises jurisdiction over frivolous constitutional or legal claims made by an immigration petitioner.